Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Dr
Scott, Louisiana 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| NATHAN HAUX § | CIVIL ACTION NO: |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | |
| GENERAL MOTORS, LLC § | |
| § | |
| *Defendant* § | JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1.   Plaintiff, NATHAN HAUX, is an individual that now and has been at all times a citizen of the state of California.

2.   Defendant, GENERAL MOTORS, LLC, hereinafter "GENERAL MOTORS," is a Delaware limited liability company with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan. GENERAL MOTORS and is a warrantor of a vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case. General Motors LLC is 100% owned by General Motors Holdings LLC. General Motors Holdings LLC is a citizen of both the State of Delaware and the State of Michigan. General Motors Holdings

LLC is 100% owned by General Motors Company. General Motors Company is a publicly traded company. No publicly held entity owns 10% or more of the stock of General Motors Company. General Motors Company was incorporated in Delaware with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan.

GENERAL MOTORS's agent for service of process is CORPORATION SERVICE COMPANY, CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr Ste 150n, Sacramento, CA 95833.

## II. Jurisdiction

3.  This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

## III. Venue

4.  Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

5.  All conditions precedents have been performed or have occurred.

## V. Facts

6.  Plaintiff, purchased the Subject Vehicle, a 2021 GMC Sierra (VIN 1GT49VEY2MF187571), from John Vance Motors in Guthrie, Oklahoma, on or about March 2, 2021, for approximately $75,521. From early in the ownership period, the Subject Vehicle began to suffer from intermittent loss of air-conditioning performance, especially during high-temperature use. Despite at least eight separate repair visits to multiple facilities and well over

ninety days of cumulative downtime, the HVAC defects have never been permanently corrected and continue to substantially impair the use, value, and safety of the Subject Vehicle.

7. On August 9, 2022, with roughly 18,000 miles on the odometer, Plaintiff presented the Subject Vehicle to Temecula Valley Buick GMC in Murrieta, California, reporting that the air conditioning intermittently stopped blowing cold air. The dealership performed a complimentary multi-point inspection and other routine checks but returned the Subject Vehicle after only a short stay, without implementing any lasting HVAC repair and without resolving the intermittent loss of cooling that had been reported. Plaintiff reasonably relied on the dealer's assurances that the vehicle had been checked and continued to operate the truck in good faith.

8. Throughout 2023 and into early 2024, Plaintiff continued to maintain the Subject Vehicle at authorized and independent repair facilities, including oil changes, fluid services, and chassis work, further evidencing his diligence in caring for the truck. On January 12, 2024, he brought the Subject Vehicle to The Auto Works in Ramona, California, complaining that the air conditioning was intermittent and would shut off. The independent facility performed diagnostics, replaced an A/C pressure sensor, replaced the battery, and serviced the system in an attempt to correct the problem. These efforts, paid for out of pocket, temporarily improved performance but did not prevent the recurring loss of cooling that continued to occur under normal use.

9. On March 9, 2024, Plaintiff again presented the Subject Vehicle to The Auto Works for suspension and chassis concerns. The shop installed upgraded torsion bar keys, bump stops, and related hardware to address drivability and load-handling issues when the truck was used as intended. These additional repairs, again undertaken at Plaintiff's expense, demonstrate that he consistently pursued professional assistance and did not ignore developing issues with the chassis or overall performance of the truck.

10. Beginning in 2025, the HVAC problems escalated and resulted in a series of extended repair attempts at Temecula Valley Buick GMC. Between approximately May 22 and June 6, 2025, Plaintiff left the Subject Vehicle with this dealer after reporting that the air conditioning would not blow cold on a consistent basis and would stop cooling while driving, particularly on longer trips in high ambient temperatures. The dealership documented the complaint and held the truck for more than two weeks, performing diagnostics and service but ultimately releasing the vehicle without a durable repair; the intermittent loss of cooling recurred soon thereafter under normal highway use.

11. Shortly thereafter, between late May and mid-June 2025, the Subject Vehicle was again at Temecula Valley Buick GMC for overlapping or follow-up work on the same air-conditioning complaint. Plaintiff cooperated fully, left the truck for an additional extended period while the dealer purportedly consulted technical resources and awaited parts, and made himself available for updates. Yet, when the Subject Vehicle was finally returned, the dealership's efforts had not corrected the underlying HVAC defect, and the air conditioning continued to fail intermittently during ordinary driving.

12. On July 1, 2025, and again on July 7, 2025, Plaintiff returned the Subject Vehicle to Temecula Valley Buick GMC, reporting that the air conditioning still would stop blowing cold air, including during long, high-temperature desert drives. The dealer performed further diagnostics, including additional multi-point inspections and HVAC testing, and billed warranty time for A/C work. Nevertheless, after each visit, the truck was delivered back to Plaintiff with the dealership claiming that it had addressed the concern, only for the same intermittent loss of cooling to reappear within a short period of normal use.

13. On August 4, 2025, the Subject Vehicle was again left at Temecula Valley Buick GMC, this time for approximately ten days, for the same complaint that the air conditioning was not blowing cold air. The repair order notes the continued A/C concerns and the dealer's decision to perform yet more diagnostics and warranty work on the HVAC system. Despite this extended stay, and despite authorization from General Motors to perform repairs, the air-conditioning defect reappeared after the vehicle was returned, demonstrating that the dealer's efforts remained ineffective.

14. On September 2, 2025, Plaintiff returned the Subject Vehicle to Temecula Valley Buick GMC once again, by now after many prior HVAC repair attempts and extended downtime. He reported that the air conditioning still failed intermittently and that interior temperatures became unreasonably high during travel. The dealership retained the vehicle for approximately six weeks, but the final repair order dated October 2, 2025, reflects that no substantive repairs were completed and that the vehicle was returned to Plaintiff with the defect unresolved. The dealer effectively told Plaintiff that they could not fix the truck, while General Motors corporate customer service denied buyback assistance and refused to offer meaningful relief, telling him that the vehicle did not qualify despite the extensive repair history and downtime.

15. Throughout this period, Plaintiff acted promptly and reasonably. He quickly returned the Subject Vehicle after each failure, followed all dealer instructions, authorized diagnostics, obtained independent repairs at his own expense when the dealer's efforts failed, and repeatedly sought help from both the dealer and General Motors corporate. The dealers and manufacturer, by contrast, have repeatedly misdiagnosed or minimized the HVAC defects, have held the Subject Vehicle for weeks at a time without implementing an effective repair, and have ultimately refused to take responsibility. Despite Plaintiff's consistent diligence and more than

adequate opportunities for General Motors and its authorized dealers to repair these defects, the same or related HVAC problems continue. The pattern of incomplete and ineffective repairs demonstrates a failure to conform the Subject Vehicle to warranty standards and a breach of General Motors' express and implied warranty obligations.

## VI. Causes of Action

**COUNT 1: VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

16. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

17. The Subject Vehicle is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

18. Plaintiff is a "purchaser" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

19. The Defendant is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

20. The sale of the Subject Vehicle to Plaintiff was accompanied by an express written warranty.

21. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the Subject Vehicle and or can cause serious bodily injury or death.

22. Plaintiff has tendered their Subject Vehicle to the Defendant for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

23. The Defendant has not repaired the non-conformities after a reasonable number of attempts and, as such, has failed to comply with and has breached all applicable warranty requirements.

24. Further, the sale of the Subject Vehicle to Plaintiff was accompanied by implied warranties that the Subject Vehicle was merchantable and fit for a particular use.

25. Defendant has breached the implied warranties of merchantability and fitness for a particular use because the Subject Vehicle when sold would not pass without objection in the trade.

26. Despite its breach of the express and implied warranties, the Defendant has refused Plaintiff's demand for a refund or replacement.

27. By the failure of the Defendant to remedy the defects as alleged above, or to issue a refund or replacement, the Defendant is in breach of their obligations under the Song-Beverly Consumer Warranty Act.

28. The Defendant's continuing breach of its obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, the Defendant is liable to Plaintiff for civil penalties in an amount as set forth below.

29. Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails . As a proximate result of the Defendant's misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

30. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

31. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

32. Defendant is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

33. The Subject Vehicle is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

34. The express warranties more fully described hereinabove pertaining to the Subject Vehicle is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

35. The actions of Defendant in failing to tender the Subject Vehicle to Plaintiff free of defects and refusing to repair or replace the Subject Vehicle tendered to Plaintiff constitute a breach of the written and implied warranties covering the Subject Vehicle and hence a violation of the Magnuson-Moss Warranty Act.

36. Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

37. As a direct and proximate result of the acts and omissions of Defendant and each of them as set forth hereinabove, Plaintiff has been damaged hereinabove in an amount in excess of $100,000 according to proof at trial.

38. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 3: BREACH OF EXPRESS WARRANTIES

39. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

40. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that the Subject Vehicle was free of defects in materials and work quality at the time of delivery.

41. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiff a Subject Vehicle that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

42. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

43. The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 4: BREACH OF IMPLIED WARRANTIES

44. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

45. The Defendant impliedly warranted that the Subject Vehicle which it designed, manufactured, and sold, was merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

46. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant are unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the Subject Vehicle had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiff.

47. Because of the defects, the Subject Vehicle is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendant breached the implied warranty of merchantability.

48. The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII. Economic and Actual Damages

49. Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out of pocket expenses, including but not limited to the money paid towards the note securing the Subject Vehicle;

   b.  Loss of use;

   c.  Loss of the "benefit of the bargain";

   d.  Diminished or reduced market value; and

   e.  Costs of repairs.

## VIII. Request for Rescission

50. Plaintiff seeks a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

51. Plaintiff revokes their acceptance of the subject vehicle for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of the Defendant that the defects in the subject vehicle would be repaired. Accordingly, Plaintiff seeks a cancellation of the automobile purchase transaction and an order of the court restoring to them the money obtained by Defendantas a result of the false representations and breaches of warranty set forth above. Plaintiff also seeks cancellation of the debt and now offers to return the automobile to Defendant.

## VIIIX. Attorney Fees and Costs

52. Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

# X. Prayer

53. For these reasons, Plaintiff prays for judgment against the Defendant for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the Subject Vehicle and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c. For incidental and consequential damages according to proof at trial;

    d. Out of pocket damages for expenditures related to any cost of repairs, deductibles, and towing charges.

    e. Any diminution in value of the Subject Vehicle attributable to the defects;

    f. Past and future economic losses;

    g. Prejudgment and post-judgment interest;

    h. Damages for loss of use of Subject Vehicle;

    i. Civil Penalties and/or Punitive damages;

    j. Damages for mental anguish;

    k. Attorney fees;

    l. Costs of suit, expert fees and litigation expenses; and

    m. All other relief this Honorable Court deems appropriate.

# XI. Demand for Jury Trial

54. Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF